UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL F.

                                  **Plaintiff,**                              22-CV-00867-HKS

v.

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                                **Defendant.**

## DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #9.

## BACKGROUND

On February 19, 2020, plaintiff, at the age of 61, protectively filed an application for Title II Social Security Disability benefits. Dkt. #4, p. 67.[1] Plaintiff alleged an onset date of December 25, 2018. *Id.*

In his Disability Report filed on February 28, 2020, plaintiff alleged he was disabled due to eye problems. Dkt. #4, p. 221. He further stated that he had stopped

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

working on December 28, 2018, explaining that he was out of work for his eye problems and then had to stay at home to be with his wife. *Id.*

Plaintiff's claim was denied initially on July 27, 2020, and on reconsideration on November 4, 2020. Dkt. #4, pp. 95-100, 108-119.

Plaintiff requested a hearing, and a telephonic hearing was held on March 2, 2021 before Administrative Law Judge ("ALJ") Paul Georger. Dkt. #4, pp. 41-66. Plaintiff appeared with counsel.

Upon examination by the ALJ, plaintiff testified that he was 62 years old and married, and he and his wife live alone. Dkt. #4, pp. 48-49. He has a driver's license but no longer drives if he does not have to. Dkt. #4, p. 49. Driving hurts his eyes, so his daughter usually takes him and his wife to appointments and does their shopping. *Id.*

Plaintiff testified that he graduated from high school and can read, write, and do math. Dkt. #4, pp. 49-50. He was employed by the State of New York as a correctional officer from at least 2006 until December 25, 2018. Dkt. #4, pp. 50-51.[2] He has not worked since December 25, 2018, and he has not applied for employment or performed volunteer work. Dkt. #4, pp. 51-52. He receives a state pension. Dkt. #4, p. 52.

---

[2] The record reflects that plaintiff actually worked for the New York State prison system for 31 years. Dkt. #4, p. 422.

Plaintiff testified that he stopped working because of his eyesight. Dkt. #4, p. 52. The vision in his left eye is cloudy, and he cannot focus with it. *Id.* He previously had problems with his right eye as well, but they have cleared up. *Id.*

Plaintiff takes aspirin for the pain in his left eye, and he is sensitive to light. Dkt. #4, p. 53. Sometimes he ices his eye to deal with the pain. *Id.* The pain also gives him headaches two to three times a week. *Id.*

Plaintiff testified he was not receiving treatment for mental health issues as he was concerned they would take his guns away. Dkt. #4, p. 55.

Plaintiff also testified that he does not have any problems with personal care activities or household chores, although he no longer mows the lawn or does yard work. Dkt. #4, pp. 55-56. A friend mows the lawn, shovels snow, and helps with other chores. Dkt. #4, p. 58.

Next, plaintiff's counsel asked plaintiff about his sensitivity to light, and plaintiff testified that outside light or very bright lights, such as LED lights, really bother him. Dkt. #4, p. 57.

Plaintiff's counsel also asked plaintiff about his interview with the Social Security Administration psychiatrist—Dr. Susan Santarpia—who reported that he stated he had stress, anxiety, and worry. Dkt. #4, pp. 58-59. Plaintiff testified: "I just deal with it."

Dkt. #4, p. 59. He said that he is under a lot of stress because his wife—who had a major stroke— cannot walk, or talk, and is "basically dying." Dkt. #4, p. 59.

The ALJ next heard testimony from Dr. Steven Sachs, a vocational expert ("VE"). Dkt. #4, p. 60. The VE testified that plaintiff's past work as a corrections officer is a medium exertion job. Dkt. #4, p. 61.

The ALJ asked the VE to consider an individual who would have no exertional limits; would be limited by occasional exposure to visual hazards in the workplace due to limited vision in his left eye; and would be limited to occasional exposure to bright light. Dkt. #4, p. 62. Given those limitations, the VE testified that plaintiff would not be able to perform his past work. *Id.*

Next, the ALJ asked the VE to assume an individual with the above limitations, who was born on November 25, 1958, and has a high school education as well as plaintiff's past work experience. *Id.*

The VE testified that such a person could perform the unskilled medium jobs of hand packer, production worker, and production inspector. *Id.*

The ALJ then asked the VE to consider the individual to have no exertional limitations; he would be limited to no exposure to visual hazards in the workplace due to limited vision in the left eye; and he would be limited to no exposure to bright light. *Id.* The

VE testified that the individual would still be capable of performing the three jobs he identified. Dkt. #4, p. 63.

Finally, the ALJ asked the VE to consider the previous hypothetical with the additional limitation that the person would be off task up to 20% of the workday and absent two or more days per month. *Id.*, The VE testified that, with those restrictions, there were no jobs in the national economy that the person could perform. *Id.*[3]

On June 2, 2021, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. Dkt. #4, pp. 23-35. The Appeals Council denied plaintiff's request for review on September 13, 2022, Dkt. #4, pp. 6-11, and this action followed.

### DISCUSSION AND ANALYSIS

**Legal Standards**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d

---

[3] Plaintiff's counsel asked additional questions of the VE, but they are not relevant here because, as discussed below, plaintiff does not challenge the ALJ's decision as it related to his eye problems.

Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers

in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since December 25, 2018, the alleged onset date; (2) plaintiff has the severe impairment of bilateral cataracts, with limited vision in the left eye; (3) plaintiff's impairments do not meet or medically equal any listed impairment; (4) plaintiff has the RFC to perform a full range of work at all exertional levels, with the following limitations: plaintiff would be limited to occasional exposure to visual hazards in the workplace, due to limited vision in his left eye, and he would be limited to no exposure to bright light; (5) plaintiff is unable to perform any past relevant work; and (6) considering plaintiff's age (60 on the alleged onset date), education, work experience, and RFC, plaintiff is able to perform the occupations of hand packer, production worker, and product inspector; and (7) plaintiff was not, therefore, disabled within the meaning of the SSA from December 25, 2018, to the date of the ALJ's decision. Dkt. #4, pp. 28-34.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the

claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of

any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

### **Challenges to the ALJ's Decision**[4]

Plaintiff makes three challenges to the ALJ's decision: (1) the ALJ failed to properly evaluate the opinion of Dr. Susan Santarpia; (2) the ALJ failed to properly evaluate plaintiff's mental impairments at step two and in subsequent steps of his analysis; and (3) the ALJ erred by relying on his own lay judgment in determining plaintiff's RFC after rejecting the only opinion evidence from an examining mental health professional. Dkt. #5, p. 1.

#### *The ALJ's Step-Two Determination*

"At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities." *Alba A. v. Comm'r of Soc. Sec.*, 1:24-CV-02577-GRJ, 2025 WL 2022547, at *3 (S.D.N.Y. July 18, 2025) (citation omitted).

"Although the Second Circuit has held that this step is limited to screening out de minimis claims. . .the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition 'severe.'" *Id.* (cleaned up).

---

[4] Plaintiff challenges the ALJ's decision solely with respect to plaintiff's mental impairments, so the Court need not address plaintiff's visual impairments.

"Indeed, a finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have no more than a minimal effect on an individual's ability to work." *Id.* (citations and internal quotation marks omitted).

Here, at step two of his analysis, the ALJ found plaintiff's eye condition to be a severe impairment. Dkt. #4, p. 28.

The ALJ also specifically considered plaintiff's generalized anxiety disorder, but he found that the record showed that it caused no more than a "mild" limitation in the relevant functional areas, *i.e.,* the "paragraph B" criteria. Dkt. #4, p. 29. The Court finds no reversible error in this determination.

First, the ALJ noted that plaintiff testified he had received no mental health treatment. Dkt. #4, p. 29. He also noted that plaintiff, in his function report, stated that stress affects his ability to think and focus and that he has trouble remembering things. Dkt. #4, pp. 29, 300. However, the ALJ noted that plaintiff nonetheless reported that he is able to pay bills, manage finances, and that he had no trouble getting along with authority figures or following instructions. Dkt. #4, pp. 29, 297, 300.

The ALJ also considered the objective findings of Dr. Susan Santarpia, a consultative psychiatric examiner who saw plaintiff on July 17, 2020. Dkt. #4, p. 29. Plaintiff reported to Dr. Santarpia that he had a dysphoric mood but that it was not bad enough that he wanted treatment. Dkt. #4, pp. 29, 422-423. Dr. Santarpia noted that, on

examination, plaintiff was cooperative; his manner of relating was adequate; his thought processes were coherent and goal directed; his affect was of full range and appropriate; his mood was euthymic; he was properly oriented; his attention and concentration were intact; his recent and remote memory skills were grossly intact; and he had average cognitive functioning. Dkt. #4, pp. 29, 423-424.

Dr. Santarpia also noted that plaintiff's "difficulties" were caused by stress, which plaintiff had explained was caused by having to give up the job he liked due to his eyesight, as well as caring for his wife full-time after her stroke in April 2018. Dkt. #4, pp. 422, 425.

The ALJ thus concluded: "This evidence shows that the claimant is understandabl[y] stressed by life stressors including his vision issues and his wife's medical condition, but that does not cause significant limitations in his mental functioning." Dkt. #4, p. 29.

Plaintiff argues that the ALJ erred by failing to discuss treatment records from plaintiff's treating physician, Dr. Felixberto Cosico, and that he thus failed to acknowledge evidence favorable to plaintiff. Dkt. #5-1, pp. 14-15. This argument fails for two reasons.

First, the ALJ cited Dr. Cosico's treatment notes in the following RFC discussion, making it clear that he had reviewed them. Dkt. #4, p. 31.

Second, Dr. Cosico's notes do not support plaintiff's claim that he suffered from a severe mental impairment. To the contrary, these notes reinforce the ALJ's conclusion that plaintiff's anxiety was situational and the product of his wife's medical condition and the demands of being her full-time caregiver.

On October 19, 2018, plaintiff saw Dr. Cosico and complained of fatigue, generalized anxiety, and poor concentration due to stress and headaches. Dkt. #4, p. 395. Plaintiff and Dr. Cosico discussed the situation with his wife, with plaintiff reporting that "he is so overwhelmed with the events and he is very stressed." Dkt. #4, p. 387. Dr. Cosico noted that he would give plaintiff an excuse for time off work, that he did not need medication, and that "he just need[s] to rest for now." Dkt. #4, p. 387. Under "Psych," Dr. Cosico stated that plaintiff's affect was "grossly normal." Dkt. #4, p. 386.

On February 15, 2019, plaintiff saw Dr. Cosico for his eye problems but did not complain about anxiety. Dkt. #4, pp. 388-390.

On March 29, 2019, plaintiff again saw Dr. Cosico, who noted: "anxiety - here to discuss condition of wife and consequence at work-he is no longer able to work at this time because he has to take care of his wife 24/7- she needs full time assistance after suffering from a major stroke." Dkt. #4, p. 391.

Finally, the Court also notes that, in his benefits application, plaintiff listed "eye problems" as the only physical or mental condition that limited his ability to work. Dkt. #4, p. 221. *See Roane v. O'Malley,* No. 22 CIV. 10704 (AEK), 2024 WL 1357845, at *6 (S.D.N.Y. Mar. 29, 2024) ("Plaintiff next contends that ALJ Romeo erred by failing to find that she had a severe hip impairment. The Court disagrees. Notably, Plaintiff did not allege a hip impairment at the time she applied for benefits.").

The ALJ thus did not err in concluding at step two of the analysis that plaintiff's mental impairments were not severe.

### *The ALJ's Assessment of Dr. Santarpia's Opinion*

Although the ALJ found plaintiff's anxiety disorder to be non-severe at step two, he still considered it in formulating the RFC, as required. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe'. . .when we assess your residual functional capacity.").

The ALJ first reviewed the opinions of state psychological consultants, M. Butler, PhD and L. Dekeon, PhD. Dkt. #4, p. 32. Both consultants, after reviewing plaintiff's medical records and Dr. Santarpia's evaluation, found that plaintiff had no limitations in the paragraph B criteria and that his mental impairment was non-severe. Dkt. #4, pp.70-71, 84-85.

The ALJ found these opinions persuasive because they were supported by, and generally consistent with, the evidence of record. Dkt. #4, p. 32. In so doing, the ALJ discussed at length the objective findings from Dr. Santarpia's report, plaintiff's hearing testimony, and his function report. *Id.*

The ALJ then turned to Dr. Santarpia's opinion that plaintiff had "[m]oderate and at times marked limitations in understanding, remembering, and applying complex directions and instructions, using reason and judgment to make work-related decisions, interacting adequately with supervisors, coworkers, and the public, sustaining concentration and performing a task at a constant pace, sustaining an ordinary routine and regular attendance at work, regulating emotion, controlling behavior, and maintaining well being, and being aware of normal hazards and taking appropriate precautions." Dkt. #4, pp. 32-33, 424-425.

The ALJ found this opinion not persuasive because it was not supported by Dr. Santarpia's own objective findings, and it was inconsistent with plaintiff's assertion that he did not want treatment for his anxiety. Dkt. #4, p. 33. This determination was reasonable given the evidence of record, as discussed above.

In fact, despite these opined limitations, Dr. Santarpia stated that they were "caused by stress," and that: "Expected duration of impairment will be dependent on [plaintiff's] general medical condition, his spouse's general medical condition, and overall stressors." Dkt. #4, p. 425.

Such assertions are consistent with the ALJ's determination that plaintiff's anxiety was situational due to understandable life stressors, but that it was not the product of a severe mental impairment. Dkt. #4, p. 32. *See Jean D. v. Comm'r of Soc. Sec.*, Case #1:20-CV-120-DB, 2021 WL 2042577, at *5 (W.D.N.Y. May 21, 2021) (noting that "situational stressors are not a basis for a finding of disability") (citations and internal quotation marks omitted).

The Court thus concludes that the ALJ did not err in his assessment of Dr. Santarpia's opinion.

### *The ALJ Did Not Rely on His Lay Opinion*

Plaintiff's final argument is that the ALJ erred by relying on his own lay opinion in determining the RFC. This argument is without merit.

In concluding that plaintiff's mental impairment caused no more than "mild" limitations in the relevant functional areas, the ALJ relied, in part, on the opinions of Drs. Butler and Dekeon. Dkt. #4, p. 32. The ALJ's conclusion was thus not based on his own lay judgment.

Moreover, plaintiff's argument that the ALJ impermissibly relied on those opinions over that of Dr. Santarpia is misplaced. *See Randall v. Comm'r of Soc. Sec.*, 1:22-CV-00985 CDH, 2025 WL 2115502, at *5 (W.D.N.Y. July 29, 2025) (rejecting argument that ALJ erred by "elevating" state agency review opinions over that of treating

physician; noting that "the ALJ has the discretion to weigh the medical sources of record and assess the persuasiveness of each").

In sum, "it is the ALJ's function to resolve disputed factual matters, and "[t]he issue is whether substantial evidence supports the ALJ's determination–not plaintiff's." *Id.* "If the ALJ's conclusions are supported by such relevant evidence as a reasonable mind might accept as adequate to support [that] conclusion, no more is required." *Id.*

Finally, "it is the Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ, and Plaintiff fails to do so here." *Argo P. v. Comm'r of Soc. Sec.*, 23-CV-324 (JLS), 2025 WL 2017102, at *5 (W.D.N.Y. July 18, 2025) (citation omitted). *See also Jade C. v. Comm'r of Soc. Sec.*, Case # 24-CV-6287-FPG, 2025 WL 2227260, at *4 (W.D.N.Y. Aug. 5, 2025) (ALJ did not err in finding that plaintiff's mental impairments were non-severe and in not including mental limitations in her RFC).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #5) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #6) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:     Buffalo, New York

              August 19, 2025

                                       **s/ H. Kenneth Schroeder, Jr.**
                                       **H. KENNETH SCHROEDER, JR.**
                                         **United States Magistrate Judge**